McALLISTER and others, commissioners of highways of the town of Gaines, *vs.* THE ALBION PLANK ROAD COMPANY.

In what cases the location of a toll-gate, erected upon a plank road, will be changed, upon application to the county court, by the commissioners of highways, on the ground of such location being unjust to the public interest, by reason of the proximity of diverging roads.

To locate toll-gates, upon a plank road, in such a manner as to compel persons who have traveled several miles on diverging roads to pay half toll for the privilege of traveling 252 rods upon the plank road, is unjust to the public interests.

So where a company has, in legal effect, constructed a plank road the distance of 252 rods, and exacts the legal toll for a distance of 400 rods.

There is no propriety or justice in allowing a company to make a plank or turnpike road on a main thoroughfare leading to a large village, for the distance of seven-eighths of a mile, and to collect tolls for that distance of all persons traveling on such thoroughfare; where the place selected for such road is that part of the thoroughfare most contiguous to the village, with which a large number of roads have united and added their travel to the piece of road over which the plank or turnpike road has been constructed.

The application to the county court, to change the location of a toll-gate, must be made by all of the commissioners of highways of the town.  But if made by two only, the objection that the third has not joined, must be made before the county court; otherwise the irregularity will be deemed waived, and the objection can not be raised on appeal.

A county court has jurisdiction to entertain an application of that nature, and to make an order changing the location of a toll-gate; notwithstanding the 29th section of the code of 1849.

Where, upon an appeal to the supreme court from the decision of the county court in changing the location of a toll-gate, referees are appointed to hear, try and determine such appeal; who make their report to the supreme court, of the evidence and of their decision thereon, the judgment to be given by the court is a judgment of reversal or affirmance of the order made by the county court, and not of the report of the referees.

The court is not to be controlled by the decision of the county court, or the report of the referees, but may give such judgment as justice and equity shall require.

THE commissioners of highways of the town of Gaines in the county of Orleans, on previous notice to the appellant, made application to the county court of said county, on the first Monday of January, 1851, for an order to alter or change the location of the toll-gate of said appellant, in pursuance of section 37 of the act of 1847 for the incorporation of plank road and turnpike road

McAllister v. Albion Plank Road Company.

companies. (*Laws of* 1847, *p.* 216.) That section provides that "The commissioners of any town in which a toll-gate may be located on any such road, or in an adjoining town, whenever they, or a majority of them, shall be of the opinion that *the location of such gate is unjust to the public interest by reason of the proximity of diverging roads*, or for other reasons, may, on at least fifteen days' written notice to the president or secretary of said company, apply to the county court of the county in which such gate is located, for an order to alter or change the location of such gate; the court, on such application, and on hearing the respective parties, and on viewing the premises if the court shall deem such view necessary, shall make such order in the matter as the said court may deem just and proper; and either party may, within fifteen days thereafter, appeal from such order to the supreme court. Such order, unless appealed from, shall be observed by the respective parties and may be enforced by attachment or otherwise as the said court shall direct: and if appealed from, the decision of the supreme court shall be final in the matter. The said county court and supreme court may direct the payment of costs in the premises as shall be deemed just and equitable." The matter was heard before the county court, and on the 8th day of February, 1851, an order was made by such court, directing the appellants to change the location of their toll-gate. The company appealed from such order to the supreme court, and the appeal was perfected on the 19th day of February, 1851. On the 10th day of July, 1851, an act was passed by the legislature amending the act for the incorporation of plank road and turnpike road companies, the first section of which provides, that "Whenever an appeal to the supreme court from an order of the county court made in the case provided by said section 37 shall be brought, pursuant to the provisions of said section, the supreme court, on motion of either party, on due notice, shall appoint three disinterested persons who are in nowise interested in such company or in the question of the location of the toll-gate thereof, and are not residents of any town through or into which such road shall run, or to and from which such road shall be a principal thoroughfare,

McAllister *v.* Albion Plank Road Company.

referees *to hear, try and determine the said appeal.*" (*Laws of 1851, p. 919.*) Section 2 provides that such referees shall proceed to view the premises and the location of the gate affected by the order appealed from, and shall proceed to a hearing of the respective parties, in the same manner as is provided by law and the rules and practice of the supreme court on references of civil actions, and shall report their decision to the said supreme court as referees are required to report, together with the evidence taken by them and the grounds of such decision. And the report of such referees may be reviewed by the said court, and judgment given thereon as justice and equity shall require, in view of the law and the facts so presented, and such judgment shall be final and conclusive. Section 3 provides, among other things, that the supreme court shall award judgment for the referees' fees, together with such amount of costs and expenses as shall be deemed reasonable by the said court, to the party succeeding on such appeal; which judgment shall be entered with the order and judgment of the said court, affirming or reversing the order of said county court appealed from. By section 4 the act is applied to appeals brought before the passage thereof, and then pending. (*Id. p.* 920.)

At a special term of this court, held in Erie county on the 25th of August, 1851, three referees were appointed in pursuance of said act, to *hear, try and determine said appeal,* one of whom being unable to serve, another was at a subsequent special term appointed in his place. The appeal was brought to a hearing before the referees, on the 26th day of November, 1851, and on the 27th day of November they made their report, reversing the order of the said county court.

The proceeding was instituted on the sole ground *that the location of such gate was unjust to the public interest, by reason of the proximity of diverging roads;* and on that ground alone, the county court ordered its removal. The referees proceeded and viewed the premises and the location of the gate, and then proceeded to a hearing of the respective parties, and stated in their report that the following facts were established before them, viz. That the plank road in question extended

McAllister *v.* Albion Plank Road Company.

from the village of Albion to a point on the Ridge road in the village of Gaines, for the distance of two and two-thirds miles; that the toll-gate is located about thirty rods from the south terminus of the road; that the first diverging road is north of the south terminus of the said road, the distance of two hundred and fifty-two rods, at a place called the five corners, and from which, to the village of Gaines, is six hundred rods. From the five corners, by the diverging road to Fairhaven, on the Ridge road, the distance is one and a half miles, and the same road extends about five miles north to Lake Ontario; that at the said five corners there is a road crossing said plank road east and west. That the said road from the five corners to Fairhaven, as well as the road from said corners to Gaines, previous to the construction of said plank road, were thoroughfares extensively and about equally traveled by the public, and accommodated a large portion of the northern part of the county of Orleans; and that both roads, for the whole distance from Albion to the Ridge road, in common dry weather, were good roads, and in bad or wet weather were bad roads; that the termini of said roads on the ridge were about one mile apart; that there are several other roads both east and west leading south from the ridge road to the village of Albion, situate in the town of Gaines, and which extended into the northern part of the county; that the said plank road was built in the summer of 1850, and was completed and inspected on the 5th of August, 1850, at which time the company commenced taking tolls; that the company had directed the toll-gatherer to receive, and he had received, four cents for double teams and two cents for single teams, passing on the said road to and from Gaines to Albion, and two cents for double teams and one cent for single teams passing on said road to and from said corners to Albion.

The referees then find, upon the foregoing facts and evidence, and decide and determine, that the order and judgment of the county court be reversed; and the grounds of such decision are, that it appears from viewing said premises, and from the evidence and facts as they appear upon said hearing, that the location of the toll-gate of said company *is not unjust to the*

*public interest by reason of the proximity* of diverging *roads,* or for any other reason ; but that on the contrary the location of said gate is such as to subserve the public interests, and that the removal of said gate, as ordered by the said county court, would deprive the company of the means of collecting their reasonable tolls.   There were other facts not stated in the report of the referees, which had a bearing upon the decision in this case, and which are sufficiently adverted to in the opinion of the court.(*a*)

(*a*) Diagram of the roads referred to in the case:

McAllister *v.* Albion Plank Road Company.

*N. Davis, jun.* for the appellant.

*B. L. Bessac,* for the respondent.

*By the Court,* TAGGART, P. J.   The referees have, in their examination of this case, arrived at a conclusion which I think is not warranted by the facts.   According to their own finding, it appears that the company so located their gate as to secure not only all of the travel on the Gaines road, on which they constructed their plank road, but also on the Fairhaven road, over which was as much travel as on the Gaines road.   I do not regard as of any importance, the travel turning south from the east and west road; but to compel those who have traveled from the east on the ridge road, and from the north a distance of from one and a half to six miles, to pay half toll for the privilege of traveling the distance of 252 rods—less than seven-eighths of a mile—is, in my opinion, unjust to the public interests.

The company is authorized to receive toll not exceeding one and a half cents per mile, for any vehicle drawn by two animals, and for every vehicle drawn by one animal, three quarters of a cent a mile.   The appellants, for the purpose of establishing an equity, or proving their conduct just and equitable, gravely offer to prove in justification of their usurping the right to control all the travel on roads diverging from their road, that notwithstanding they had the legal power to charge full toll for the whole distance from Gaines to Albion, they actually refrained from charging quite double what they had a right to charge for the distance of 252 rods.   I do not concede that the amount of toll which the company *do charge,* is the criterion by which their rights in this case are to be determined.   They have the legal right to charge full toll to every traveler who passes through their gate, irrespective of the place where they may have come onto the road, with the single exception of those who live within one mile of the gate, and of those who are exempted from paying toll by statute.   (*Mallory* v. *Austin,* 7 *Barb. S. C. Rep.* 626.   *Stuart* v. *Rich,* 1 *Caines,* 182.   *The*

McAllister *v.* Albion Plank Road Company.

*People* v. *Kingston and Middletown Turnpike Company,* 23 *Wend.* 193.)

It is said that " there are several other roads, both east and west, leading south from the ridge road to the village of Albion, situated within the limits of the town of Gaines, and which extend into the northern part of the county." That there is a road from the ridge to Albion, parallel to the Fairhaven road, a mile and a quarter east of it ; also two roads coming from the north to the ridge road between Fairhaven and the east line of the town of Gaines. In answer to this, it is proved that the parallel roads are bad, worse than the Fairhaven road; and the road from Albion to Holley, on the canal, has some bad hills.

Assuming, as the referees have found, that the travel on the two roads was about equal, I think the location of the toll-gate unjust. What propriety or justice is there in allowing a company to make a plank or turnpike road on any main thoroughfare leading to a large village, for the distance of seven-eighths of a mile, and collect toll for that distance of all persons traveling on such thoroughfare ? And how much less propriety or justice is there in selecting, as the place for such road, that part of the thoroughfare most contiguous to the village with which a large number of roads have united and added their travel to the piece of road over which the plank road has been constructed ?

In the case of *Mallory* v. *Austin,* above cited, the court say at the conclusion of the opinion, " the counsel for the appellant put some cases of flagrant injustice, that might occur under the law, upon the construction which we feel bound to adopt; as for instance, the location of but a single gate on the road, and that near the city of Utica, and an exaction of the toll for the entire route. We do not think such a case likely to occur ; but if it should, we know of no remedy for that or other like cases of injustice, but an application for the removal of the gate, or such an amendment of the act regulating plank roads, as may reach the evil complained of." This case is not to be compared to the hypothetical case above put, in degree, but the principle is the same. The company have, in legal effect, constructed a

McAllister *v.* Albion Plank Road Company.

plank road the distance of 252 rods, and exact the legal toll for a distance of 400 rods. But this case is much stronger for the respondents than the referees have found. On the hearing before the county court, ten witnesses testified that the travel on the Fairhaven road, before the construction of the plank road, was double that on the Gaines road; two, that it exceeded the travel on the Gaines road; three, that the travel on the two roads was about equal; and five, that the travel on the Gaines road exceeded that on the Fairhaven road. And I do not know that the evidence before the referees materially varies the question as to the amount of travel on the two roads. It seems to me, therefore, inasmuch as the same evidence was before the referees, that was given in the county court, that they have erred in finding that the travel on the two roads was about equal. But this being a matter of fact, I do not propose to make any decision upon that ground, but base my opinion upon the facts found by the referees.

It is contended that the order of the county court is "unjust to the company in compelling the location of the gate at a point where all travel can shun it. That no person coming to or going from Albion need pass the toll gate at all, if it be changed, yet all must travel the road for one third of the whole distance. Even in visiting the village of Gaines, driving half a mile farther will enable any party to shun the gate." All this may be true. One answer is that it was known to the appellants before they constructed their road. They had no right to anticipate that they would secure all the travel on both roads, and collect tolls therefor. They knew the situation of the roads before they constructed their road. If the situation of the roads or the country was such that the travel would inevitably shun their road, it is pretty strong evidence that the public interest did not require its construction. The frequency of the roads east and west furnishes no sufficient reason for retaining this gate. The public should not be driven a roundabout road a mile or two for the sake of shunning their gate; nor should they be compelled to travel over a worse road. The people on the Fairhaven road have made and improved that, at their own expense, and should not be deprived

of its benefits, unless they can receive an equivalent therefor. And I think the privilege of traveling over 252 rods of plank road by paying toll therefor is not such an equivalent as they are entitled to.

On the facts found by the referees, I think they came to an erroneous conclusion, and their report should be reversed and the order of the county court should for that reason be affirmed, unless there shall be found some insuperable objection in the proceedings before the county court, or in the conclusiveness of the report of the referees.

It is objected that the county court erred in excluding the evidence of the rate of toll fixed and charged by the appellants to persons coming onto or leaving their road at the diverging road. I think not. The offer was not sufficient. The tolls charged were higher per mile than the statute allows; and besides, the public had no security that such rate of tolls would be continued after a final decision of the question of removal. Nor could any such security be given. The law makes no provision for such a case. It is also contended that the county court had no jurisdiction upon the application, because it was not made in conformity to the statute. The notice was signed and the application made by John J. McAllister and Major T. Lamont, commissioners of highways of the town of Gaines; whereas there are three commissioners of highways for said town. This objection would have been fatal if it had been made before the county court. All of the commissioners should meet or be notified to meet, and when so met or notified, a majority may act. But in this case the county court had jurisdiction of the subject matter. The appellants, by appearing and not objecting to the regularity of the process or proceeding, waived the irregularity and conferred jurisdiction of the person upon the court. This objection can not, therefore, now be sustained. (*Squires* v. *Broome C. P.* 10 *Wend.* 600.)

It is also contended that the county court had no jurisdiction of the proceeding, *or subject matter,* and no power to make the order appealed from. This is a question of more difficulty of solution. Section 29 of the code of 1849, provides that " All

statutes now (then) in force comprising or defining the jurisdiction of the county courts, so far as they conflict with such act, are repealed ; and those courts shall have no other jurisdiction than that provided by the next section." It is contended on the part of the respondents that it was the intention of the framers of the code to regulate and define the original and general jurisdiction of the courts, and the form and manner of enforcing civil remedies therein by action, and that it was not their intention to interfere with the numerous and important incidental powers conferred upon the old court of common pleas, and transferred to the county courts under the present constitution. Section 471 of the code provides that " Until the legislature shall otherwise provide, this code shall not affect any special statutory remedy not heretofore obtained by action." The statutory remedies referred to were numerous, and many of them were to be sought in the county courts or courts of common pleas alone, and others in that and other courts. I think, too, the above mentioned act amending the act for the incorporation of plank road and turnpike road companies implicitly furnishes a legislative recognition of the jurisdiction in this case.

It seems to me that the counsel for the respondent is right in this construction of this statute, and that the court has jurisdiction of this proceeding.

The only remaining question is, whether this court will interfere, on a simple question of fact, to reverse the decision of the referees. An appeal was given from the county court to the supreme court. The county court decided the matter upon the merits, and in my opinion decided it correctly, but the referees reversed his decision. They are appointed " to hear, try and determine the said appeal." They are to proceed to a hearing in the same manner as is provided by law and the rules and practice of the supreme court on references of civil actions, and shall report their decision to the said supreme court as referees are required to report, together with the evidence taken by them, and the grounds of their decision. And the report of such referees may be reviewed by the said court and judgment given thereon, as justice and equity shall require, in view of the law and the

facts so presented and such judgment shall be final and conclusive.

The statute does not declare that the report of the referees shall have the same effect as referees' reports in civil actions, but on the contrary thereof the statute expressly provides that judgment is to be *given thereon, as justice and equity shall require.* This court is not therefore to be controlled by the previous decision of the county court, or the report of the referees. The judgment to be given is a judgment of reversal or affirmance of the order made by the county court, and not of the report of the referees.

On the whole case I think the order of the county court should be affirmed.

[ERIE GENERAL TERM, April 26, 1852. *Taggart, Marvin, Hoyt* and *Mullett,* Justices.]